# STATE OF MICHIGAN

# COURT OF APPEALS

LORETTA GAYLE GALEA,

Plaintiff-Appellant,

v

FCA US LLC, JIM REIHL'S FRIENDLY
CHRYSLER JEEP, INC., and US BANK NA,

Defendants-Appellees.

FOR PUBLICATION
March 13, 2018
9:00 a.m.

No. 334576
Oakland Circuit Court
LC No. 2016-150986-NZ

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

GADOLA, J.

In this vehicle warranty dispute, plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7) on the basis that the parties had entered a valid and enforceable arbitration agreement. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In 2014, plaintiff purchased a new Jeep Cherokee from Jim Reihl's Friendly Chrysler Jeep, Inc. The vehicle was manufactured by defendant FCA US LLC. In her complaint, plaintiff alleged that the vehicle experienced numerous defects and nonconformities within the time and mileage limits of the manufacturer's express warranty, which required extensive service, substantially impaired the value of the vehicle to plaintiff, and irreparably shook her confidence in the vehicle. In January 2016, plaintiff filed a complaint alleging breach of express and implied warranties, revocation of acceptance under Michigan's Uniform Commercial Code (UCC), MCL 440.2101 *et seq.*, and violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.* Plaintiff also alleged that the vehicle dealer violated Michigan's Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.*, and that the vehicle manufacturer violated Michigan's new motor vehicle warranties act, MCL 257.1401 *et seq.* Finally, plaintiff asserted holder liability against the finance company, US Bank NA.

Defendants Jim Reihl's Friendly Chrysler Jeep, Inc. and FCA US LLC moved for summary disposition under MCR 2.116(C)(7), with which US Bank NA later joined, asserting that plaintiff's lawsuit was barred by an agreement to submit any warranty disputes to binding arbitration. According to defendants, plaintiff agreed to arbitration in exchange for obtaining a discount through Chrysler's "Employee Friends Program." Defendants attached to their motion

-1-

a "Pricing and Acknowledgment" form bearing plaintiff's signature, which contained the following language:

> The Chrysler Employee Friends Program allows eligible purchasers to obtain a new vehicle at a substantial discount. I understand that, in consideration for this discount, I will not be able to bring a lawsuit for any warranty disputes relating to this vehicle. Instead, I agree to submit any and all disputes through the Chrysler Vehicle Resolution Process, which includes mandatory arbitration that is binding on both Chrysler and me.

The form also stated in all-caps lettering near the top of the page: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." Defendants argued that the signed agreement to arbitrate was presumptively valid, that the burden of proving non-arbitrability was on plaintiff as the party seeking to avoid arbitration, and that the arbitration agreement was enforceable under both state and federal law, including the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq*.

Plaintiff asserted that she did not voluntarily participate in the discount program, that the vehicle dealer fraudulently obtained a control number under the name of someone she did not know to secure the discount, and that she never saw the discount program documents during the purchase transaction. Plaintiff further argued that, under the Federal Arbitration Act (FAA), 9 USC 1 *et seq*., the trial court was required to hold a summary trial to decide the factual disputes regarding whether plaintiff voluntarily agreed to arbitration. Finally, plaintiff argued that the Federal Trade Commission (FTC) had promulgated rules stating that mandatory, binding arbitration was prohibited under the MMWA and that the arbitration clause was unenforceable because it was not contained within the four corners of the warranty document.

In reply, defendants argued that, in *Abela v Gen Motors Corp*, 469 Mich 603; 677 NW2d 325 (2004), the Michigan Supreme Court rejected both the single-document rule and the FTC's conclusion that the MMWA barred agreements for binding arbitration of claims covered by the MMWA. Defendants also argued that the arbitration clause was valid and enforceable because plaintiff admitted that she received a copy of the sales document that contained the arbitration clause, she obtained a discount in exchange for the agreement to arbitrate, and she signed all of the relevant documents to complete the transaction.

Following a hearing, the trial court issued an order granting defendants' motion for summary disposition. The trial court concluded that there was no factual dispute regarding the agreement to arbitrate, noting that plaintiff did not dispute signing the arbitration acknowledgment form. The court also concluded that the rules promulgated by the FTC did not supersede binding Michigan caselaw, which held that binding arbitration agreements are permitted under the MMWA. Finally, the court rejected plaintiff's contention that the arbitration agreement was invalid under the single-document rule, concluding that such a requirement was rejected by the Michigan Supreme Court in *Abela*.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7). *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005). A motion under MCR 2.116(C)(7) is appropriately granted when a claim is barred by an agreement to arbitrate. *Maiden v Rozwood*, 461 Mich 109, 118-119 n 3; 597 NW2d 817 (1999). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Id.* at 119. However, "a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id.* Whether an arbitration agreement exists and is enforceable is a legal question that we review de novo. *Hicks*, 267 Mich App at 84.

## III. VOLUNTARY AGREEMENT TO ARBITRATE

Plaintiff first argues that the trial court erred by granting summary disposition in favor of defendants because she did not knowingly participate in the employee friends discount program and did not receive a substantial discount on her vehicle. Plaintiff also argues that the trial court erred by failing to hold a summary hearing under 9 USC 4 of the FAA because there were material questions of fact regarding whether she voluntarily agreed to arbitration. We disagree.

"An arbitration agreement is a contract by which the parties forgo their rights to proceed in civil court in lieu of submitting their dispute to a panel of arbitrators." *Beattie v Autostyle Plastics, Inc*, 217 Mich App 572, 577; 552 NW2d 181 (1996). When assessing whether a dispute must be submitted to arbitration, courts must first "determine whether an arbitration agreement has been reached by the parties." *Horn v Cooke*, 118 Mich App 740, 744; 325 NW2d 558 (1982). A contract to arbitrate does not exist unless it was formed by the mutual assent of the parties. *Id.* "A party cannot be required to arbitrate an issue he has not agreed to submit to arbitration." *Id.* "The determination of whether an arbitration contract exists is for the courts to decide, applying general contract principles." *Id.* at 744-745.

"Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Watts v Polaczyk*, 242 Mich App 600, 604; 619 NW2d 714 (2000). "Moreover, mere failure to read an agreement is not a defense in an action to enforce the terms of a written agreement." *Id.* Plaintiff's signature appears on a one-page document that clearly states in conspicuous language and font that plaintiff is entering an agreement to arbitrate in exchange for a friends and family discount. Plaintiff does not deny signing this document, nor does she assert that her signature was obtained under duress. Accordingly, plaintiff has not set forth any arguments to persuade us that she did not knowingly and voluntarily enter the arbitration agreement.

We also find unpersuasive plaintiff's argument that inadequate consideration supported the arbitration agreement because she paid more than the manufacturer's suggested retail price for the vehicle. Both a dealer worksheet, which plaintiff signed, and an incentives configuration form that are part of the lower court record indicate that the discount was applied to plaintiff's purchase of the vehicle. Plaintiff offered no evidence to the contrary below or on appeal.

Plaintiff therefore has not shown failure of the consideration given in exchange for the agreement to arbitrate.

Plaintiff also contends, citing MCL 440.2204(1) of Michigan's UCC, that the arbitration agreement is invalid because she signed the arbitration agreement on May 31, 2014, while she made the down payment on the vehicle on April 17, 2014. MCL 440.2204(1) states the following: "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Nothing in this section precludes additional terms in subsequent documents from becoming part of a sales contract. Plaintiff's argument that the arbitration agreement could not have been part of the sales contract because it was not signed until May 31, 2014, is therefore without merit.

Finally, plaintiff argues that she was entitled to a summary hearing under 9 USC 4. This statute provides a mechanism for a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided in such agreement." 9 USC 4. Plaintiff highlights the following language: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 USC 4. Defendants correctly point out that Michigan does not have an equivalent rule. Further, 9 USC 4 is inapplicable because this action is not in federal district court and plaintiff is not a party aggrieved by an alleged failure to arbitrate. Rather, plaintiff is seeking to avoid arbitration. Plaintiff offers no authority that this section of the United States Codes applies in Michigan courts, and in fact, she cites contrary authority from the United States Supreme Court instructing courts to apply state-law contract principles to questions concerning whether an agreement to arbitrate exists. See *First Options of Chicago, Inc v Kaplan*, 514 US 938, 944; 115 S Ct 1920, 1924; 131 L Ed 2d 985 (1995) ("[W]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state law principles that govern the formation of contracts."). Plaintiff has not shown that the trial court erred by refusing to hold a summary hearing under 9 USC 4.

## IV. BINDING ARBITRATION OF MMWA CLAIMS

Plaintiff next argues that the trial court erred by refusing to apply the 2015 FTC rule barring binding arbitration of MMWA claims. The MMWA, 15 USC 2301 *et seq.*, is a federal statute dealing with consumer product warranties. This case involves 15 USC 2310, which concerns "informal dispute settlement procedures." The statute states the following:

> (1) Congress hereby declares it to be its policy to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms.

> (2) The [Federal Trade] Commission shall prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies. Such rules shall provide for participation in such procedure by independent or governmental entities. [15 USC 2310(a).]

The statute goes on to state that, if an informal dispute settlement procedure complies with the FTC's rules and is properly included in a written warranty, "the consumer may not commence a civil action (other than a class action) under subsection (d) of this section unless he initially resorts to such procedure[.]" 15 USC 2310(a)(3)(C). The statute also states, "In any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence." *Id.*

In 1999, the FTC interpreted these sections to mean that an informal dispute settlement mechanism (IDSM) could not be binding. Federal Trade Commission, *Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act*, 64 Fed Reg 19700, 19708, § C.2 (April 22, 1999). The FTC reasoned that the statute implied that a valid IDSM could not foreclose litigation because of Congress's use of the phrase "unless he initially resorts to such procedure." *Id.* The FTC also noted that the statute addressed the admissibility of IDSM decisions in subsequent litigation, further implying that an IDSM could not foreclose future litigation. *Id.* In 2015, the FTC reaffirmed this position, noting that, "[s]ince the issuance of the 1999 FRN, courts have reached different conclusions as to whether the MMWA gives the Commission authority to ban mandatory binding arbitration in warranties." Federal Trade Commission, *Final Action Concerning Review of Interpretations of Magnuson-Moss Warranty Act*, 80 Fed Reg 42710, 42719, § B.4(d) (July 20, 2015).

In 2004, the Michigan Supreme Court squarely addressed the issue of whether binding arbitration agreements are permissible under the MMWA in *Abela*, 469 Mich 603. In *Abela*, the plaintiff purchased a 1999 Chevrolet truck from a General Motors dealership under the defendant's employee purchase plan, which offered him a discount because of his wife's employment with General Motors. *Id.* at 605. As part of the purchase contract, the plaintiff was required to sign an agreement requiring him to submit any warranty disputes to binding arbitration. *Id.* The truck subsequently developed a number of problems, which led to costly repairs. *Id.* The plaintiff and his wife filed suit against General Motors, raising claims under the MMWA and Michigan consumer protection law. *Id.* General Motors moved for summary disposition, and the trial court denied the motion, holding that agreements to submit to binding arbitration were prohibited under the MMWA. *Id.* On appeal, this Court reversed, citing two federal circuit court opinions as binding precedent for the proposition that the MMWA allows compulsory, binding arbitration of written warranty claims. *Id.* at 605-606. The Michigan Supreme Court agreed with the Court of Appeals' ultimate conclusion, but disagreed that the circuit court cases cited by this Court were binding on Michigan Courts. *Id.* at 606. The Supreme Court stated: "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Id.* (citations omitted). The Supreme Court then stated the following:

> Although the federal courts of appeals decisions are not binding, we nevertheless affirm the decision of the Court of Appeals. We have examined the decisions in *Walton v Rose Mobile Homes LLC*, 298 F3d 470 (CA 5, 2002), and *Davis v Southern Energy Homes, Inc*, 305 F3d 1268 (CA 11, 2002), and find their analyses and conclusions persuasive. Both decisions carefully examined the MMWA and the FAA, and both concluded that the text, the legislative history, and the purpose of the MMWA did not evidence a congressional intent under the FAA to bar agreements for binding arbitration of claims covered by the MMWA.

Persuaded by these analyses of the federal courts of appeals, we conclude that plaintiffs' agreement with defendant to address the warranty claim through defendant's dispute resolution process, including mandatory arbitration, is enforceable. [*Abela*, 469 Mich at 607.]

We are bound by the Michigan Supreme Court's decision in *Abela*. The 2015 action of the FTC merely affirms its previous position regarding compulsory, binding arbitration, which the *Abela* court rejected. Congress has not amended the MMWA in any manner that would affect the binding character of *Abela*. Accordingly, we reject plaintiff's contention that we are bound to follow the FTC rule prohibiting compulsory, binding arbitration of MMWA claims.

## V. SINGLE-DOCUMENT RULE

Finally, plaintiff argues that FTC regulations prohibit enforcement of the arbitration agreement because the agreement was not included as part of the warranty document. Under the authority delegated by Congress in 15 USC 2302, the FTC promulgated rules regarding the content of written warranties. 16 CFR 701.3. These rules state, in relevant part, the following:

(a) Any warrantor warranting to a consumer by means of a written warranty a consumer product actually costing the consumer more than $15.00 shall clearly and conspicuously disclose in a single document in simple and readily understood language, the following items of information:

* * *

(6) Information respecting the availability of any informal dispute settlement mechanism elected by the warrantor in compliance with part 703 of this subchapter[.] [16 CFR 701.3.]

Although the parties agree that the arbitration clause was not part of the warranty document, defendants argue that the Michigan Supreme Court rejected the single-document rule in *Abela*. Plaintiff conversely argues that, although *Abela* involved an arbitration agreement that was outside of the warranty document, the single-document rule was not discussed by the Supreme Court and implicit conclusions are not binding precedent. See *People v Heflin*, 434 Mich 482, 499 n 13; 456 NW2d 10 (1990) ("[J]ust as obiter dictum does not constitute binding precedent . . . 'implicit conclusions' do [not as well]."). Although we agree that implicit conclusions are not binding precedent and that the Michigan Supreme Court in *Abela* did not directly address the issue of whether the single-document rule bars enforcement of a binding arbitration provision that was not contained in the warranty document, the Supreme Court's analysis in *Abela* compels us to conclude that the single-document rule does not apply to an agreement to undergo binding arbitration.

In *Abela*, 469 Mich at 607, our Supreme Court stated that it was persuaded by the "analyses and conclusions" of the Fifth Circuit Court of Appeals in *Walton*, 298 F3d 470, and the Eleventh Circuit Court of Appeals in *Davis*, 305 F3d 1268, to conclude that the MMWA does not prohibit binding arbitration of MMWA claims. In *Walton*, the Fifth Circuit explained the following regarding the meaning of the phrase "informal dispute settlement procedures" as used in the MMWA:

The text of the MMWA does not specifically address binding arbitration, nor does it specifically allow the FTC to decide whether to permit or to ban binding arbitration. Although the MMWA allows warrantors to require that consumers use "informal dispute settlement procedures" before filing a suit in court, and allows the FTC to establish rules governing these procedures, it does not define "informal dispute settlement procedure." However, the MMWA does make clear that these are to be used before filing a claim in court. Yet binding arbitration generally is understood to be a substitute for filing a lawsuit, not a prerequisite.

\* \* \*

[B]inding arbitration is not normally considered to be an "informal dispute settlement procedure," and it therefore seems to fall outside the bounds of the MMWA and of the FTC's power to prescribe regulations. We thus conclude that the text of the MMWA does not evince a congressional intent to prevent the use of binding arbitration. [*Walton*, 298 F3d at 475-476.]

Then, in *Davis*, the Eleventh Circuit stated the following regarding the scope of the same phrase:

When considering a preliminary draft of the MMWA, the Senate reflected that "it is Congress' intent that warrantors of consumer products cooperate with government and private agencies to establish informal dispute settlement mechanisms that take care of consumer grievances without the aid of litigation or *formal arbitration*." S Rep No 91-876, at 22-23 (1970) (emphasis added). As the Fifth Circuit concluded, "there is still no evidence that Congress intended binding arbitration to be considered an informal dispute settlement procedure. Therefore, the fact that any informal dispute settlement procedure must be non-binding, does not imply that Congress meant to preclude binding arbitration, which is of a different nature." *Walton*, 298 F3d at 476. [*Davis*, 305 F3d at 1276.]

We agree with the analyses set forth in *Walton* and *Davis*, which our Supreme Court accepted as persuasive in *Abela*, and conclude that binding arbitration is not an informal dispute settlement procedure or mechanism within the meaning of the MMWA. Rather, binding arbitration is a formal, final adjudication that acts as a substitute for a judicial forum, not merely a prerequisite to it.[1] Agreements to submit to binding arbitration therefore fall outside the FTC's rule-making authority under the MMWA, and the single-document rule does not apply to binding arbitration agreements. See 15 USC 2310(a) ("The [FTC] shall prescribe rules setting forth the minimum

---

[1] Excluding binding arbitration from the concept of an informal dispute settlement procedure further makes sense of the provisions in the MMWA stating that a consumer "may not commence a civil action . . . unless he initially resorts to such procedure," and that, "[i]n any civil action arising out of a warranty obligation and relating to a matter considered in such a procedure, any decision in such procedure shall be admissible in evidence." 15 USC 2310(a)(3)(C). Both of these provisions contemplate that an informal dispute settlement procedure is a prerequisite, not a substitute, for the judicial decision-making process.

requirements for an *informal dispute settlement procedure* which is incorporated into the terms of a written warranty . . .") (emphasis added); *see also* 16 CFR 701.3(6) (stating that "information respecting the availability of any *informal dispute settlement mechanism*" must be included in a single warranty document) (emphasis added). Accordingly, the parties' binding arbitration agreement is enforceable despite the fact that the agreement was not included as part of a single warranty document.

Affirmed.


/s/ Michael F. Gadola
/s/ Colleen A. O'Brien