*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAMIR HAMMOUD and HANADI KABBANI,

Plaintiffs-Appellees,

v

NEPHROLOGY CONSULTANTS OF MICHIGAN, doing business as NEPHROLOGY CONSULTANTS, PC, and DR. JOHN P. SPECK,

Defendants-Appellants.

UNPUBLISHED
September 19, 2019

No. 345718
Oakland Circuit Court
LC No. 2017-158355-NH

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

In this appeal by leave granted[1] from the trial court's order denying their motion for summary disposition, defendants argue that the trial court erred by refusing to summarily dismiss plaintiffs' complaint where plaintiffs did not provide a notice of intent to pursue claims of medical malpractice until after the two-year limitations period applicable to the claims had expired. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff, Samir Hammoud, first presented to defendant, Dr. John P. Speck, on September 8, 2014, for evaluation following positive serology results. Hammoud reported feeling generally unwell, tired, and weak for approximately a year, as well as a history of kidney stones. In the progress note from the initial office visit, Dr. Speck opined that Hammoud's symptoms and recent test results "all point[ed] strongly to renal limited [granulomatosis with polyangiitis (GPA)]." Dr. Speck further noted that a renal biopsy could not be performed for several months because Hammoud's cardiologist would not permit Hammoud to suspend certain

---

[1] *Hammoud v Nephrology Consultants of Mich*, unpublished order of the Court of Appeals, entered October 30, 2018 (Docket No. 345718).

medications. Nonetheless, Dr. Speck indicated his belief that there was "enough evidence to begin treatment now . . . after [Hammoud] receives a flue shot, pneumovax [sic], and has blood drawn for a quantiferon assay . . . ." The treatment involved a medication regimen that included 60 milligrams (mg) of the steroid Prednisone daily. Although the progress note concerned the September 8, 2014 office visit, Dr. Speck did not electronically sign the record until October 1, 2014.

Hammoud's medical records from Dr. Speck's office also include a "telephone encounter" record describing Dr. Speck's conversation with plaintiff, Hanadi Kabbani (Hammoud's wife), on October 14, 2014, in which Dr. Speck discussed the need for Hammoud to begin his medications. Dr. Speck and Hammoud both testified that the telephone conversation took place on October 15, 2014, and Hammoud and Kabbani maintained that Dr. Speck spoke with Hammoud, rather than Kabbani.[2] According to records from plaintiffs' pharmacy, Dr. Speck "wrote"[3] the first Prednisone prescription on October 28, 2014. Hammoud began taking the Prednisone and other medications sometime thereafter.

By the summer of 2015, Hammoud began experiencing pain in both hips and discovered that he had developed avascular necrosis—a recognized side effect of exposure to high doses of Prednisone. Further, his later treating physicians opined that he did not have GPA. Hammoud required surgical replacement of both hips in 2016.

Plaintiffs issued a notice of intent to defendants on October 18, 2016, and filed their complaint alleging medical malpractice on April 19, 2017. Defendants moved for summary disposition under MCR 2.116(C)(7), arguing that the action was time-barred because plaintiffs did not provide a notice of intent until after the two-year statute of limitations had expired. The trial court denied the motion, reasoning that a question of fact remained as to when Dr. Speck prescribed the Prednisone and, thus, when plaintiffs' cause of action accrued.

## II. STANDARDS OF REVIEW

We review de novo the trial court's ruling on a motion for summary disposition. *Galea v FCA US LLC*, 323 Mich App 360, 368; 917 NW2d 694 (2018). Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by a statute of limitations. *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010). Although evidence beyond the pleadings is not always required for a motion brought under Subrule (C)(7), affidavits, depositions, admissions, and other evidence offered by the parties must be considered to the extent of their

---

[2] Although Dr. Speck's deposition was not part of the record before the trial court for purposes of defendants' dispositive motion, this Court granted plaintiffs' motion to expand the record to include Dr. Speck's deposition testimony. *Hammoud v Nephrology Consultants of Mich*, unpublished order of the Court of Appeals, entered January 16, 2019 (Docket No. 345718).

[3] The pharmacy record refers to October 28, 2014 as the "Rx Written Date." However, there is no evidence that Dr. Speck provided a written prescription, and Kabbani expressed her belief that Dr. Speck verbally ordered the prescription by phone.

admissibility. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). But see MCR 2.116(G)(3)(a) (requiring supporting evidence "when the grounds asserted do not appear on the face of the pleadings"). For purposes of Subrule (C)(7), "[t]he contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Maiden*, 461 Mich at 119. "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Joliet v Pitoniak*, 475 Mich 30, 35; 715 NW2d 60 (2006).

## III. ANALYSIS

"In general, a plaintiff in a medical malpractice case must bring his claim within two years of when the claim accrued, or within six months of when he discovered or should have discovered his claim." *McMiddleton v Bolling*, 267 Mich App 667, 670; 705 NW2d 720 (2005) (quotation marks and citation omitted). See also MCL 600.5805(8) and MCL 600.5838a(2). In addition, " 'not less than 182 days before the action is commenced,' " the plaintiff must give the defendant written notice of intent to file the claim. *McMiddleton*, 267 Mich App at 670, quoting MCL 600.2912b(1). The notice of intent required by MCL 600.2912b tolls the statute of limitations during the notice period. MCL 600.5856(c); *Decker v Rochowiak*, 287 Mich App 666, 676; 791 NW2d 507 (2010).

The parties seemingly agree that the timeliness of plaintiffs' complaint is governed by the date on which plaintiffs' claims accrued, rather than when the claims were or should have been discovered. Defendants contend that plaintiffs' claims accrued on September 8, 2014, when Dr. Speck decided to treat Hammoud for GPA by prescribing Prednisone or, at the latest, on October 1, 2014, when Dr. Speck electronically signed the progress note concerning that office visit. Thus, according to defendants, plaintiffs' complaint was untimely because their notice of intent dated October 18, 2016, was provided more than two years after the claims accrued. Plaintiffs, on the other hand, argue that the claims could not have accrued earlier than October 28, 2014, when Dr. Speck prescribed the Prednisone that allegedly caused Hammoud's avascular necrosis.

Under MCL 600.5838a, a medical malpractice claim "accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim." "[A] plaintiff must plead facts that are sufficient to place the defendant physician on notice of the specific acts or omissions that the plaintiff believes caused his or her injuries." *Kincaid v Cardwell*, 300 Mich App 513, 530; 834 NW2d 122 (2013). Thus, we must turn to plaintiffs' complaint to determine the specific acts or omissions that purportedly caused Hammoud's injuries. *McKiney v Clayman*, 237 Mich App 198, 202; 602 NW2d 612 (1999). Although plaintiffs' complaint presents repetitive allegations concerning defendants' conduct, the specific acts or omissions described therein can be condensed into three general categories: (1) diagnosing Hammoud with GPA without a verifying biopsy or histopathological confirmation (the Diagnosis Claim); (2) prescribing high doses of Prednisone based upon an unconfirmed and inaccurate diagnosis (the Treatment Claim); and (3) failing to advise Hammoud of the unconfirmed basis for the diagnosis and the adverse effects of Prednisone (the Informed Consent Claim).

With respect to plaintiff's Diagnosis Claim, Hammoud first treated with Dr. Speck on September 8, 2014. Although Dr. Speck's written record from that visit indicates that Hammoud's symptoms and previous testing "all point strongly to renal limited GPA," it is notable that the record was not electronically signed until October 1, 2014. Furthermore, other remarks within the record suggest that it includes information that could not have been added until after September 8, 2014. For instance, Dr. Speck did not order a kidney biopsy until September 23, 2014. Yet the September 8, 2014 record indicates that Hammoud's cardiologist would not permit Hammoud to suspend certain medications until a later date, making the biopsy impossible for a period of several months. Dr. Speck testified that his discussion with the cardiologist must have occurred sometime between September 23, 2014, and October 1, 2014. Thus, the mere fact that the September 8, 2014 record refers to GPA does not definitively establish that Dr. Speck settled on the GPA diagnosis that day. However, given the date on which the record was electronically signed, coupled with the notation that there was enough evidence to begin treatment for GPA, it appears that Dr. Speck was satisfied with the diagnosis no later than October 1, 2014. Consequently, plaintiffs' October 18, 2016 notice of intent was filed more than two years after the Diagnosis Claim accrued, and the trial court erred by denying defendants' motion for summary disposition with respect to any claim arising from that conduct.

Turning to plaintiffs' Treatment Claim, while the September 8, 2014 progress note reflects Dr. Speck's belief that there was enough evidence to begin treatment—including the Prednisone that allegedly caused Hammoud's avascular necrosis—there is no indication that Dr. Speck actually provided Hammoud with the prescription at that time or on October 1, 2014, when the record was electronically signed. To the contrary, as noted by the trial court, the record suggests that the prescription may have been delayed because Hammoud first required flu and pneumonia vaccinations, as well as additional blood testing. Defendants place significant emphasis on the record of the telephone call between Dr. Speck and either Hammoud or Kabbani that occurred on October 14 or 15, 2014, in which Dr. Speck reportedly urged Hammoud to begin the medication regimen. While we agree that, from a purely logical perspective, it is unlikely that Dr. Speck would encourage Hammoud to begin taking medication that had not yet been authorized, like the September 8, 2014 progress note, the telephone encounter record is devoid of any evidence concerning when Dr. Speck actually issued or authorized the prescription. Further, in opposing defendant's motion for summary disposition, plaintiffs produced a pharmacy record in which the "Rx Written Date" for the initial Prednisone prescription is identified as October 28, 2014. As a result of this conflicting evidence, reasonable minds could differ as to when Dr. Speck authorized the Prednisone prescription. Therefore, the trial court correctly determined that a question of fact precluded summary disposition with respect to plaintiffs' Treatment Claim.

Questions of fact remain as to the accrual of plaintiffs' Informed Consent Claim for the same reason. "The doctrine of informed consent requires a physician to warn a patient of the risks and consequences of a medical procedure." *Wlosinski v Cohn*, 269 Mich App 303, 308; 713 NW2d 16 (2005). While there is some indication that Dr. Speck may have advised someone in Hammoud's household of certain adverse effects of Prednisone, it remains unclear whether Dr. Speck actually related those side effects to Hammoud (rather than Kabbani) and whether those warnings were adequate. But at any rate, it was necessary for Dr. Speck to obtain Hammoud's informed consent for the treatment at some point *before* it began, see *Cornelius v Joseph*, 471 Mich 902, 904 (2004) (MARKMAN, J., dissenting) (observing that the plaintiff

-4-

presented evidence that the defendant breached the standard of care by failing to obtain informed consent *before* first treatment began), and plaintiffs alleged in their complaint that he failed to do so. Thus, Dr. Speck's alleged omission occurred when he authorized the Prednisone prescription without first obtaining informed consent. And for the reasons already explained, a question of fact remains as to when Dr. Speck authorized the medication.

Defendants argue that Dr. Speck's decision to prescribe Prednisone should be tied back to the allegedly incorrect diagnosis because, at all points thereafter, he was merely adhering to his initial diagnosis and treatment plan. In support of this position, defendants cite two published opinions from this Court: *McKiney*, 237 Mich App 198, and *Kincaid*, 300 Mich App 513. In *McKiney*, 237 Mich App at 199, the defendant provided treatment to the plaintiff on the basis of a misdiagnosis in 1990, 1992, and 1993. In an appeal concerning the timeliness of the plaintiff's complaint, this Court assumed for purposes of its analysis that the defendant's "1992 and 1993 misdiagnoses and decisions to continue utilizing laser treatment" were separate acts or omissions that resulted in new accrual dates, but also noted that the assumption was not fully supported by the record because evidence suggested that the defendant "continuously adhered to the same diagnosis and treatment determinations . . . ." *Id.* at 204 & n 4. Later, in *Kincaid*, 300 Mich App at 527, this Court read *McKiney* as implying that "a physician's mere adherence to an initial misdiagnosis and erroneous treatment plan at later appointments [is] insufficient by itself to give rise to new accrual dates." However, the *Kincaid* Court clarified that a physician is not "immunized from liability by simply adhering to a mistaken diagnosis or treatment plan at all subsequent appointments." *Id.* at 535.

> Rather, a physician must act within the standard of care on *each* visit, and a physician's continued adherence to a particular diagnosis or treatment plan at a later appointment might constitute a breach of the standard of care if there are facts that show that continued adherence was unreasonable. Moreover, if the continued adherence to the diagnosis or treatment plan constitutes a breach of the standard of care, the plaintiff may seek redress for the harms caused by that breach as a separate claim, even if the initial adoption of the diagnosis or treatment plan was itself outside the period of limitations. In other words, the plaintiff can plead and prove that his or her physician's failure to correct the initial diagnosis or treatment plan constituted a breach of the standard of care that was distinct from the initial adoption of the diagnosis or treatment plan. [*Id.*]

In particular, the plaintiff would need to establish facts that made the continued adherence unreasonable so as to distinguish the claim from a prohibited "continuing wrong" theory of liability. *Id.* at 530. Thus, where the plaintiff's complaint could not be read as "alleging discrete acts or omissions that occurred on specific dates after [the defendant's] first treatment," the Court construed the balance of the plaintiff's vague allegations as referring to acts or omissions that occurred that day. *Id.* at 536. The Court further concluded that "[a]ll later acts and omissions involving the failure to inform, refer, and treat—in the absence of more specific allegations or evidence—[were] simply part of [the defendant's] continuing course of treatment and [the plaintiff] could not rely on [the defendant's] continuing treatment alone to establish later accrual dates." *Id.*

The case before us is distinguishable because plaintiffs *did* allege a discrete act or omission that was independent from the Dr. Speck's initial diagnosis and determination of a treatment plan, namely, Dr. Speck's act of prescribing Prednisone to Hammoud. Neither *Kincaid* nor *McKiney* addressed circumstances in which the defendant determined a course of treatment but did not put it into effect until some later date. See *id*. at 518, 533 (alleging the defendant failed to order proper testing or referrals beginning with first evaluation); *McKiney*, 237 Mich App 199-200, 204 (acting on a misdiagnosis, the defendant began laser treatment outside of limitations period). In contrast, even if Dr. Speck had decided to prescribe Prednisone to Hammoud by the time he electronically signed the progress note on October 1, 2014, a question of fact remains as to when he first *acted* to authorize the prescription, and plaintiffs offered evidence suggesting that Dr. Speck's authorization may have occurred less than two years before plaintiffs tolled the statute of limitations with their October 18, 2016 notice of intent. Accordingly, with respect to plaintiffs' Treatment and Informed Consent Claims, the trial court correctly determined that a question of fact precluded summary disposition.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica

-6-