*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN DUANE WILLIAMS,

        Plaintiff-Appellant,

and

ZMC PHARMACY, LLC,

        Intervening Plaintiff,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY, TERRANCE EFRON
WRIGHT, PUBLIC AFFORDABLE PLUMBING,
INC., and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

        Defendants,

and

VIRGINIA MAE GRIMBLE and GOLDIE
FRANCIS MERRIMAN,

        Defendants-Appellees.

UNPUBLISHED
August 13, 2020

No. 344183
Wayne Circuit Court
LC No. 17-002844-NF

JOHN DUANE WILLIAMS,

        Plaintiff-Appellant,

and

ZMC PHARMACY, LLC,

        Intervening Plaintiff,

v

No. 344210
Wayne Circuit Court
LC No. 17-002844-NF

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

Defendant-Appellee,

and

VIRGINIA MAE GRIMBLE, GOLDIE FRANCIS
MERRIMAN, TERRANCE EFRON WRIGHT,
PUBLIC AFFORDABLE PLUMBING, INC., and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendants.

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

These interlocutory appeals arise from plaintiff's claims for no-fault benefits and tort recovery. In Docket No. 344183, plaintiff appeals by leave granted[1] an order granting summary disposition in favor of defendants Virginia Mae Grimble and Goldie Francis Merriman. In Docket No. 344210, plaintiff appeals by leave granted[2] an order granting summary disposition in favor of defendant Michigan Automobile Insurance Placement Facility (MAIPF). On appeal, plaintiff argues that the trial court erred by granting these motions because the evidence demonstrated that plaintiff's impairment left him unable to continue his normal manner of living and because the MAIPF did not establish that he knowingly submitted false material statements in support of his claim. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). Finding no error requiring reversal, we affirm.

I. BACKGROUND

In the early afternoon of September 28, 2016, plaintiff was the passenger in a GMC van driven by defendant Terrance Efron Wright. As they traveled southbound on Gulley Road, Wright's van struck a Ford Escape that was turning left onto westbound Cherry Hill Road. The

---

[1] *Williams v Mich Auto Ins Placement Facility*, unpublished order of the Court of Appeals, entered January 22, 2019 (Docket No. 344183).

[2] *Williams v Mich Auto Ins Placement Facility*, unpublished order of the Court of Appeals, entered January 22, 2019 (Docket No. 344210). This Court's January 22, 2019 orders also consolidated the appeals in Docket Nos. 344183 and 344210.

Escape was driven by Merriman, owned by Grimble, and insured by defendant State Farm Mutual Automobile Insurance Company. The GMC van was owned by defendant Public Affordable Plumbing, Inc., and was not insured. At the time of the accident, plaintiff and Wright were on the way to a plumbing job at an apartment complex. Plaintiff testified that his knee was bothering him after the crash, but he otherwise felt "okay," so he went home without seeking medical treatment. A couple of days later, plaintiff went to Providence Hospital with complaints of pain in his neck, lower back, and right knee. Plaintiff testified that Providence Hospital personnel said he might have strained something, instructed him to use warm compresses, and prescribed muscle relaxers and Motrin. Since that time, plaintiff sought treatment from several healthcare providers for the injuries he sustained in the accident.

Plaintiff filed suit in February 2017, seeking payment of no-fault benefits from the MAIPF and damages from Grimble and Merriman. Grimble and Merriman moved for summary disposition of plaintiff's third-party claims, arguing that plaintiff did not suffer an impairment that affected his general ability to lead his normal life. The MAIPF also sought summary disposition, arguing that plaintiff was ineligible for no-fault benefits under MCL 500.3173a(2), as amended by 2012 PA 204.[3] The trial court granted both dispositive motions, and this appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

## III. DOCKET NO. 344183

In Docket No. 344183, plaintiff challenges the trial court's order granting summary disposition in favor of Grimble and Merriman. According to plaintiff, Grimble and Merriman were not entitled to summary disposition because, under the applicable standard, the evidence

---

[3] The no-fault act, MCL 500.3101 *et seq*., underwent substantial revisions when it was amended by 2019 PA 22, effective June 11, 2019, but the orders appealed in this case were entered before the amendment took effect.

established a question of fact as to whether he suffered a serious impairment of body function. We disagree.

Michigan's no-fault act limits the circumstance in which a person injured in an automobile accident can pursue damages in tort. *Turkelson*, 322 Mich App at 606. Under MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." For purposes of this provision, the Legislature defined "serious impairment of body function" as meaning "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5), as amended by 2012 PA 158. Interpreting this definition, the Supreme Court held that "the statutory language provides three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Only the third element set forth in *McCormick* is at issue in this appeal.

"[T]he common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. This involves a "subjective, person- and fact-specific inquiry" and "necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. In addition, "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected" and "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id*. at 202-203.

The trial court granted Grimble and Merriman's motion for summary disposition because it found no clear delineation in plaintiff's activities before and after the accident. Plaintiff contends that the trial court erred because he testified about the changes in his manner of living that were caused by the accident and suggests that his testimony established a question of fact concerning whether the accident affected plaintiff's ability to live his normal life. We disagree. Although the evidence presented by Grimble and Merriman is largely at odds with plaintiff's testimony, it is not so inconsistent with plaintiff's testimony that it should preclude summary disposition.

Plaintiff testified that, since the accident, he was no longer able to work as a plumber or engage in recreational activities he previously enjoyed, such as basketball, bowling, and boxing. With respect to his employment, plaintiff stated that he last worked just before the accident and that he was with his employer, on the way to a job site, when the accident occurred. Plaintiff further testified that he was working approximately six days a week. But according to the records cited by Grimble and Merriman, plaintiff regularly sought Social Security Disability (SSD) benefits on the basis of a claimed inability to work. Indeed, the Social Security Administration (SSA) records provided to the trial court establish that plaintiff applied for SSD benefits in 2007, 2009, 2011, and 2016. In his 2016 application, plaintiff stated that his ability to work was limited because of problems with his left hand, knee pain, back pain, and depression. He further stated that he stopped working as of March 1, 2016, because of these issues and because he was laid off. Plaintiff identified the same date as the alleged date of onset for his disability. In addition, plaintiff

only produced one doctor's order restricting his ability to work, and that order expired October 8, 2016.

It can fairly be inferred from the totality of this evidence, even viewing the evidence in the light most favorable to plaintiff, that plaintiff's testimony about his work likely was incomplete. Even if plaintiff was actively working just before the accident, it stands to reason from his SSA records that it was not at all uncommon for plaintiff to cease working for extended periods because of perceived or actual disabilities. Grimble and Merriman also produced a surveillance report demonstrating that on September 8, 2017, plaintiff was able to do work that involved manual labor, twisting, bending, and jumping without any apparent signs of discomfort. While the evidence of plaintiff's return to some form of employment was admittedly limited, it is consistent with other evidence demonstrating that defendant's employment was commonly sporadic before the accident.

Beyond working, the only evidence plaintiff presented regarding his preaccident lifestyle was his own testimony, in which he said: "I played basketball. I worked out. I bowled, heavy equipment operator, you know. I used to box. Anything physical . . . ." Plaintiff stated that he could no longer engage in any of those activities and now spent most of his day "trying to adjust to watching a little TV" and doing physical therapy exercises. But plaintiff failed to establish how often he engaged in physical recreational activities before the accident, and his voluminous medical records evidencing chronic pain issues suggest that these activities were likewise sporadic. For example, in January 2016 (months before the accident underlying the present suit, which occurred in September 2016), plaintiff reported to the emergency department at Providence Hospital with complaints of pain in the right side of his back that radiated to his middle or lower abdomen. Plaintiff stated that the pain had been ongoing for several days and rated his pain at 10 out of 10. In March 2016 and April 2016, also months before the subject accident, plaintiff went to his primary care physician with complaints of back pain. Plaintiff reported that he had consistent back pain since an automobile accident in 2007, and again rated his pain at 10 out of 10 for the last two months. Plaintiff's doctor referred him to physical therapy for eight weeks, although the record fails to demonstrate whether or not plaintiff complied with that referral. Given plaintiff's consistent complaints of debilitating pain in the months preceding his accident, even viewing the evidence in the light most favorable to him, it can be inferred that plaintiff was frequently unable to participate in physical activities before the accident.

Considering the totality of the evidence, and viewing the evidence under the proper standard, the trial court did not err by concluding that plaintiff failed to establish a genuine issue of material fact concerning whether his accident-related impairments affected his general ability to lead his normal life. The evidence before the court demonstrated that plaintiff's employment and participation in physical recreational activities was sporadic before the accident and remained so afterward. The surveillance report showed that plaintiff was able to do work that involved manual labor by September 2017 at the latest. He was seen lifting luggage into a vehicle, bending over to pass tools to another person, jumping to and from the bed of a pickup truck, using his hands and shoulders to pull a hose, "playing/boxing" with another person, and freely ambulating without the assistance of the cane he occasionally carried, all without apparent signs of discomfort. Because a comparison of plaintiff's preaccident and postaccident manner of living does not reveal significant changes, reasonable minds would agree that plaintiff did not sustain an impairment serious enough to affect his general ability to lead his normal life. The trial court did not err by granting summary disposition in favor of Grimble and Merriman on this basis.

## IV. DOCKET NO. 344210

In Docket No. 344210, plaintiff argues that the trial court erred by granting the MAIPF's motion for summary disposition because the MAIPF did not establish that he was ineligible for no-fault benefits under former MCL 500.3173a(2). We disagree.

At the time of the accident, plaintiff was a passenger in an uninsured vehicle operated by Wright and owned by Public Affordable Plumbing, Inc. Plaintiff lived alone and did not have a vehicle or no-fault insurance. Because there were no identifiable insurers of higher priority under MCL 500.3114, as amended by 2016 PA 347, plaintiff applied for no-fault benefits through the MAIPF. In pertinent part, plaintiff stated in his application for benefits that he was injured in the accident and described his injuries as "neck back shoulder leg knee head." Immediately after this entry, the application asked, "Did you already suffer from any of these injuries before the accident?" Plaintiff checked no. Several question later, the application asked, "Had you sought treatment for any prior conditions before this accident?" Plaintiff again checked no. The MAIPF filed a motion for summary disposition, arguing that plaintiff's responses to these questions and his deposition testimony concerning the same issues were false, which rendered him ineligible for benefits under former MCL 500.3173a(2). The trial court agreed and granted summary disposition in favor of the MAIPF.

Former MCL 500.3173a(2) provided:

A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.]4503 that is subject to the penalties imposed under [MCL 500.]4511. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan.

In *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 784; 910 NW2d 666 (2017), this Court construed former MCL 500.3173a(2) as containing five requirements:

[A] person commits a fraudulent insurance act under this statute when (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [Footnote omitted.]

Plaintiff argues that the trial court erred by granting the MAIPF's motion because the MAIPF did not establish that plaintiff's statements were false, knowingly made, or material to the

-6-

claim.[4]  We disagree.  With respect to the veracity of plaintiff's statements, plaintiff suggests that his answers were not false because his prior medical records included only subjective reports of pain, rather than a diagnosis of bulging discs or loss of lumbar and cervical lordosis.  Plaintiff's argument is unpersuasive because he did not specifically identify those diagnoses when asked to describe his injuries in his application for benefits.  Instead, plaintiff vaguely referred to the locations of his injuries, i.e., his neck, back, shoulder, leg, knee, and head, before stating that he had not suffered "from any of these injuries before the accident."  Plaintiff also denied having "sought treatment for *any* prior conditions before this accident." (Emphasis added.)

Contrary to plaintiff's responses in his application for benefits, his medical records were riddled with regular complaints of similar infirmities.  As noted earlier, plaintiff sought treatment for complaints of extreme pain in his back several times in 2016 before the accident occurred.  In 2014, plaintiff visited the hospital, again with complaints of "back pain," that the emergency room doctor explained was "actually pain in his neck and goes down towards his left arm."  In 2011, plaintiff reported to the hospital stating that he injured his lower back when he bent at the waist to lift a "foot locker."  In 2010, plaintiff was apparently raising similar complaints, as his records include x-rays of his thoracic spine, cervical spine, lumbosacral spine, and knee. Without detailing the remainder of plaintiff's medical history, it will suffice to say that plaintiff had a well-documented history of seeking treatment for various issues concerning his neck, back, and knees. These records demonstrate that plaintiff's denial of similar injuries or treatment for prior conditions was patently false.

Plaintiff also contends that he did not know the statements were false, claiming that he merely forgot about the details of his medical history and noting that the application for benefits was filled out for him by an individual at United Rehab.  With respect to plaintiff's first explanation, fraudulent conduct can be established with circumstantial evidence. *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996).  Given the extensive and continuous nature of plaintiff's history, reasonable minds could not differ in rejecting plaintiff's self-serving suggestion that he forgot about medical issues that arose regularly since at least 2010.  Plaintiff's second explanation lacks merit as well.  The application for benefits included a fraud warning just above plaintiff's signature, captioned in large capital letters, that reiterated the content of former MCL 500.3173a(2).  "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (quotation marks and citation omitted).  As such, plaintiff cannot avoid the repercussions of including false statements in his application for benefits by claiming that he did not read the document that was completed by United Rehab.  Moreover, even if we credited plaintiff's claimed ignorance of the content of the form he signed, he made similar representations at his deposition, testifying that he had never had shooting pains in his back before or required treatment for his knee or neck.

---

[4] Plaintiff argues at length about the nature of his statements in support of his wage loss claim, but the trial court did not reach that issue at the hearing.  Consequently, we will focus the analysis of this issue on the matters concerning plaintiff's medical history that were raised in the MAIPF's second motion and addressed by the trial court.

Lastly, plaintiff argues that any misrepresentations in his application for benefits were not material because no-fault benefits are available to claimants who have preexisting conditions that are exacerbated by an automobile accident. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425; 864 NW2d 609 (2014) (citation omitted). "The Legislature originally created the MAIPF to provide no-fault insurance to any person who was unable to obtain insurance through ordinary means." *Spectrum Health Hosp v Mich Assigned Claims Plan*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343563); slip op at 5. The MAIPF is responsible for assigning claims to participating insurers, but only after first making an initial determination that the claimant is eligible for benefits. *Id*. at ___; slip op at 6-7, citing MCL 500.3173a(1), as amended by 2012 PA 204. No-fault benefits are only available "to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). Even if a claimant can prove that an accident exacerbated or aggravated a preexisting condition, the fact of a preexisting condition is still highly relevant to the issue of causation and, thus, material to the claim and the MAIPF's task of determining eligibility for benefits. And it goes without saying that the insurer is not required to expend time in attempting to ferret out whether an individual had any indication of a preexisting injury, the starting point for an evaluation of whether an accident exacerbated or aggravated a preexisting condition, when that information could and should have simply been conveyed by truthful answers. Accordingly, we reject plaintiff's claim of error. The trial court did not err by finding that plaintiff knowingly submitted false material statements to the MAIPF and was therefore ineligible for benefits under former MCL 500.3173a(2).

## V. CONCLUSION

Affirmed. In Docket No. 344183 Grimble and Merriman, as the prevailing parties, may tax costs pursuant to MCR 7.219. In Docket No. 344210 the MAIPF, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel