*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FERNDALE REHABILITATION CENTER and
TOMMIE THOMAS,[1]

        Plaintiffs-Appellants,

v

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
May 20, 2021

No. 351478
Oakland Circuit Court
LC No. 2019-171642-NF

Before: K. F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Plaintiff, Ferndale Rehabilitation Center (FRC), appeals as of right the order granting summary disposition in favor of defendant, Allstate Insurance Company. We affirm.

On April 10, 2018, Tommie Thomas was a passenger in an uninsured vehicle that was involved in an accident. Thomas did not request or require any medical attention or transportation to the hospital at the scene. However, Thomas started receiving treatment for injuries related to the accident from FRC shortly after the accident and continuing to September 2018. Because the vehicle he was in was uninsured at the time of the accident and no other applicable insurer was identified, Thomas applied for no-fault benefits through the Michigan Assigned Claims Plan (MACP)[2] one month after the accident. MACP assigned Allstate to the claim for benefits. Thomas purportedly received treatment from injuries incurred in the accident from FRC and assigned his right for payment of services to FRC. When Allstate did not pay the requested no-fault benefits to FRC, FRC initiated the instant lawsuit.

Defendant moved for summary disposition under MCR 2.116(C)(10), arguing in part that Thomas made materially false statements in his application regarding his medical history,

---

[1] This appeal was filed by Ferndale Rehabilitation Center (FRC) regarding its claims for no-fault benefits under the assignment of rights by Tommie Thomas.

[2] The MACP is the successor to the Michigan Assigned Claims Facility (MACF).

substance use, and household services, warranting dismissal under MCL 500.3173a. In response, FRC argued there was no evidence that FRC had committed or was complicit in any fraudulent act, intended to defraud or deceive defendant, or was aware of any falsehoods by Thomas. FRC further asserted that Thomas's alleged fraudulent statements were not material to his claim or binding on FRC's assigned claims. Finally, FRC argued that Thomas's medical and Social Security records could not be considered in support of the motion for summary disposition because they were not authenticated and were hearsay.

The trial court granted defendant's motion for summary disposition, finding Thomas's false statements constituted fraudulent insurance acts and barred no-fault benefits to Thomas and FRC. A written order memorializing the trial court's ruling was entered the same day.

On appeal, FRC argues the trial court erred in granting summary disposition to defendant. This Court reviews de novo a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 617-618; 873 NW2d 783 (2015). When deciding a motion for summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Summary disposition should be granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Additionally, the trial court may only consider substantively admissible evidence, meaning the substance of the evidence was plausibly admissible even if it was not admissible in form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009).

Likewise, this Court reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). In interpreting a statute, the reviewing court's role is to ascertain the legislative intent that may reasonably be inferred from the express language in the statute. *Id*. If the statutory language is unambiguous, then the statute must be applied as written without judicial interpretation. *Id*. It is presumed "the Legislature intended the meaning it plainly expressed . . . ." *Cox v Hartman*, 322 Mich App 292, 298-299; 911 NW2d 219 (2017) (quotation marks and citation omitted). Similarly, contract interpretation is a question of law reviewed de novo. *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010).

FRC first argues the trial court could not properly consider the medical and Social Security records provided by defendant in support of its summary disposition motion because they were unauthenticated and comprised hearsay.[3] We disagree.

---

[3] While the trial court did not specifically address FRC's hearsay and authentication argument, this Court, can nevertheless review the issue because FRC properly raised the issue before the trial court and a party should not be penalized by the trial court's failure to address or decide an issue

Under MCR 2.116(G)(6), "[a]ffidavits, depositions, admissions, and documentary evidence offered in support or in opposition to a motion based on [MCR 2.116(C)(10)] shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion."  MCR 2.116(G)(6).  Although the evidence presented in support of a motion for summary disposition does not have to be in admissible form, the content or substance of the evidence must be admissible. *Barnard Mfg Co, Inc*, 285 Mich App at 373.

Generally, hearsay evidence is not admissible unless it qualifies under an exception to the rules of evidence.  MRE 802; *Merrow v Bofferding*, 458 Mich 617 626; 581 NW2d 696 (1998). Hearsay exceptions applicable to records include:

> (4) Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment.  Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.
>
> \* \* \*
>
> (6) Records of Regularly Conducted Activity.  A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
>
> \* \* \*
>
> (8) Public Records and Reports.  Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report[.]  [MRE 803(4),(6), and (8).]

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

---

that was otherwise properly before it. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

claims it to be." *Meagher v Wayne State Univ*, 222 Mich App 700, 724; 565 NW2d 401 (1997); MRE 901(a).

Here, Thomas's medical records largely include statements made for purposes of medical treatment before the accident occurred, which were made at or near the time Thomas sought medical attention. There is no question that a patient's medical records are routinely made in the course of a medical provider's business. As a result, Thomas's medical records qualify for admission under MCL 803(4) and MRE 803(6). Thomas's Social Security records, which were recorded by the Social Security Administration (SSA), for purposes of providing federal benefits to Thomas, also qualify for admission under a hearsay exception, MRE 803(8). The trial court thus properly considered the records when deciding defendant's motion for summary disposition.

FRC next argues the trial court erred in finding that Thomas knowingly made materially false statements to defendant in his application for no-fault benefits and request for replacement services. Under the no-fault act, a claim is ineligible for benefits if the party asserting the claim commits a fraudulent insurance act. MCL 500.3173a(2). Specifically, the version of MCL 500.3173a[4] applicable to this matter provided:

> (1) The [MACP] shall make an initial determination of a claimant's eligibility for benefits under the assigned claims plan and shall deny an obviously ineligible claim. The claimant shall be notified promptly in writing of the denial and the reasons for the denial.

> (2) A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under section 4503 that is subject to the penalties imposed under section 4511. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan. [MCL 500.3173a.]

"[I]n order to qualify as part of a fraudulent insurance act under [MCL 500.3173a(2)], the false statement merely must have been presented as part of or in support of a claim to the [MACP] for payment or another benefit." *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 775-782; 910 NW2d 666 (2017) (quotation marks and citation omitted). As a result, the *Candler* Court recognized that the elements for proving a fraudulent insurance act include:

---

[4] The no-fault act, MCL 500.3101 *et seq.*, underwent substantial revisions when it was amended by 2019 PA 21, effective June 11, 2019. Even though the order relevant to this appeal was recorded after the amendment, the complaint was filed before the amendment—thus, the earlier version of the no-fault act controls in this case. *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, ___ Mich App ___, ___ n 3; ___ NW2d ___ (2020) (Docket Nos. 347553 and 348440); slip op at 3 n 3.

(1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the [MACP]. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Id.* at 779-780.]

"MCL 500.3173a(2) does not require that any particular recipient have received the false statement in order for the act to qualify as a fraudulent insurance act, as long as the statement was used as part of or in support of a claim to the [MACP]." *Candler*, 321 Mich App at 780 (quotation marks and citation omitted). "[F]raud may be established by circumstantial evidence." *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 458; 559 NW2d 379 (1996). To be a fraudulent statement, the insured must have known the statement was "false at the time it was made" or made it "recklessly, without any knowledge of its truth." *Bahri v IDA Prop Cas Ins Co*, 308 Mich App 420, 424; 864 NW2d 609 (2014), abrogated on other grounds by *Williams v Farm Bureau Mut Ins Co of Michigan*, __ Mich App __; __Nw2d__ (2021).

Initially, FRC contends that Thomas's misinterpretation of the medical and medication history sections on the application was a reasonable mistake and did not amount to fraud. FRC further asserts Thomas did not intend to make false statements and corrected innocent errors in his application regarding his medical and medication history by giving truthful testimony during an examination under oath (EUO) and giving defendant access to his medical records. However, "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands it contents." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (quotation marks and citation omitted). By signing the application, Thomas specifically acknowledged that he had "reviewed the application in its entirety and attest[ed] that the information contained therein [was] true and accurate." In fact, Thomas admitted at his EUO that he did not request help with the application, nor was he pressured to complete the application at his attorney's office, indicating that he understood what the application was asking of him. As a result, and absent any contradictory evidence, the evidence supports that Thomas understood the questions being asked in his application.

In Thomas's application for no-fault benefits, he indicated that he injured his back, neck, and head in the accident. Thomas wrote in the application that the extent of his medical history consisted of arthritis, his medication history consisted of valium, and he was not eligible for Social Security benefits.[5] When questioned at his EUO, however, Thomas admitted that he has been unemployed since 1997 due to a disability in his knees. Thomas testified that he had a knee replacement on his left leg in 2006 and was going to schedule a knee replacement in his right leg. He further testified that he had taken Vicodin for four to five years for knee pain prior to his 2006 surgery, but had taken no prescription medications in the year prior to the accident. At a later deposition, taken in another lawsuit arising out of the same car accident, Thomas testified that he had been taking Klonopin for anxiety off and on both before and after the accident at issue. He

---

[5] On the application, Thomas checked the box for "no" in response to whether he was eligible for social security benefits. However, he also wrote "SSI" next to the box, leading to some confusion as to whether he understood the question.

had also been taking Tylenol 4 prior to the accident and had used heroin prior to the accident and a couple of times after the accident. He further testified that he been in inpatient treatment for substance abuse in 2016 and that he had been using methadone for seven or eight years as of his 2019 deposition. Thomas admitted that it would be false to say the only medication he took before he accident was valium.

Thomas's medical records establish that Thomas omitted many, many, significant facts from his application for benefits. A medical record from 2000, for example, shows that he had a history of ulcers from IV drug abuse and also had HIV for which he was taking medications. A medical record from 2008 shows that Thomas had a lumbar spine exam due to a history of low back pain. The lumbar exam showed degenerative arthritis in his lower lumbar spine. A medical record from 2015 shows Thomas went to the emergency room due to ankle swelling. In the document, Thomas also reported a 9-month history of chronic headaches and blurry vision as well as a history of 3 slipped discs in his back. Another 2015 medical record shows Thomas again reported back pain and was prescribed medication for the issue; that he had hypertension for which he was prescribed medication, and; that he had chronic severe obstructive pulmonary disease for which he was prescribed medication. A 2017 medical record shows that Thomas went to the doctor for back pain. At that appointment, Thomas's current medications included a multitude of prescriptions. A medical record dated less than a month prior to the accident shows that Thomas went to the doctor for back and hip pain and anxiety. His medical history taken at the time listed a significant number of both ailments and currently prescribed medications.

In a 2013 application for social security benefits, Thomas stated that he could not walk because it was too painful, that he does house and yard work when he is able, that it was difficult for him to go outside, and that he used a cane every day. Additionally, Thomas admitted at his deposition that he had been receiving Social Security disability benefits for approximately six or seven years prior to the accident.

Thomas also testified that he had been convicted of retail fraud in 1996 but that was the only conviction he had. Thomas's criminal history, however, revealed many other convictions both prior to and after 1996. His convictions included several of larceny, an additional retail fraud, and possession of controlled substances

Finally, Thomas testified that Kellie Hyman assisted him with household chores from approximately April 15, 2018 through September 2018. Thomas testified at his EUO that she came to his three-room flat once per month to vacuum, do dishes, and clean for three to four hours. In his replacement services statements, however, it was claimed that Hyman provided daily household services to Thomas after the accident. Notably, some of the claimed services included snow shoveling in July and August of 2018.

A review of the above leaves no question that Thomas was dishonest in his application for no-fault benefits, at his EUO, and in documents claiming replacement services. Therefore, the trial court did not err in finding Thomas made false statements on his application for no-fault benefits.

Despite these false statements, FRC maintains the statements were not material to bar FRC's claim because defendant had the means to discover the truth, which it did obtain through

-6-

Thomas's deposition testimony and medical records, nor did defendant rely on Thomas's false statements. MCL 500.3173a(4) states that a fraudulent insurance act occurs if "a person who presents or causes to be presented an oral or written statement . . . knowing that the statement contains false information concerning a fact or thing material to the claim[,]" which does not exclude situations in which the insurer is able to discover for itself the truth of the statements. MCL 500.3173a(4). In fact, it has been consistently held that "an insurer has no duty to investigate or verify the representations of a potential insured." *Titan Ins Co v Hyten*, 491 Mich 547, 570; 817 NW2d 562 (2012). As stated, MCL 500.3173a(2) "does not require that any particular recipient have received the false statement in order for the act to qualify as a fraudulent insurance act, as long as the statements [were] used as part of a or in support of a claim to the [MACP]." *Candler*, 321 Mich App at 780 (quotation marks and citation omitted). Because the fraudulent acts occurred when Thomas submitted his application to MACP, the fact that defendant uncovered the truth during its investigation of Thomas's medical and medication history is irrelevant. FRC's distinction that the false statements were submitted to MACP, and not defendant, is similarly without merit because the false statements in Thomas's application were submitted to obtain no-fault benefits.

FRC's next argument is that the statements were not material to bar FRC's claim because Thomas's medical and medication history had no bearing on his eligibility for no-fault benefits. However, "[a] statement is material if it is reasonably relevant to the insurer's investigation of the claim." *Bahri*, 308 Mich App at 425. Under MCL 500.3107(1)(a), no-fault coverage is limited to "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). As a result, coverage is limited to accident-related injuries, which generally excludes preaccident medical conditions. *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 341; 830 NW2d 428 (2012).

On this basis, Thomas's medication and medical history was material to his claim for no-fault benefits because defendant had to ensure it was not also compensating for medical expenses related to Thomas's prior (or other current) medical conditions. The questions on the application reasonably gave the MACP and defendant a place to start when determining Thomas's eligibility for no-fault benefits. As a result, the trial court did not err in finding Thomas's statements were material to his claim.

Lastly, FRC argues that, it was an error to bar FRC's assigned claim against defendant. To support its argument, FRC points to the agreements executed after each of Thomas's appointment with FRC, assigning Thomas's claims to FRC "all rights to collect benefits directly from the insurance company for the service or services that [Thomas has] received; and all rights to proceed against the insurance company obligated to provide benefits of which [Thomas is] due." But, "[a]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *First of America Bank v Thompson*, 217 Mich App 581, 587; 552 NW2d 516 (1996). On this basis, FRC only holds the same rights as Thomas held before the assignment to FRC. As a result, FRC is only entitled to a recovery of no-fault benefits if Thomas is entitled to no-fault benefits— which he is not due to his false statements. Because FRC's claim for no-fault benefits are derivative of Thomas's claim, a misrepresentation that bars Thomas's claim also bars FRC's claim. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 524; 895 NW2d 188 (2016).

Affirmed.  Defendant being the prevailing party, it may tax costs pursuant to MCR 7.219.


/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica