*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD EMERZIAN,

        Plaintiff-Appellant,

v

NORTH BROS FORD INC.,

        Defendant-Appellee.

FOR PUBLICATION
March 21, 2024
9:10 a.m.

No. 365100
Wayne Circuit Court
LC No. 22-000894-CZ

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting defendant's motion for dismissal under MCR 2.116(C)(7) because of an agreement to arbitrate in the parties' lease agreement for a vehicle. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff filed a complaint, styled as a class-action, alleging fraudulent business practices. Plaintiff alleged that defendant was required by the financer of the parties' lease agreement, Ford Credit, to have customers purchasing vehicles sign completed "pricing sheets" detailing all agreed-upon charges, including the vehicle price, fees, and after-market add-ons. Plaintiff alleged that defendant would have customers sign blank pricing sheets and fill in inflated prices for after-market add-ons, for instance charging hundreds of dollars for a $50 wheel lock. Plaintiff alleged that, upon purchasing a vehicle from defendant, he was not given a copy of his pricing sheet until he demanded one after purchase when he discovered that he was charged $359 for $170 floor mats, and hundreds of dollars for wheel locks. The complaint alleged fraud in the inducement, fraudulent misrepresentation, breach of contract, unjust enrichment, and violation of consumer-protection laws, and sought declaratory and injunctive relief in addition to damages.

Defendant moved to dismiss the complaint on the ground that it was exercising a provision in the lease agreement stating that either party may select arbitration to settle any claim related to the lease agreement. In particular, the lease agreement states that "[e]ither you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration." The lease agreement

also indicated that defendant immediately assigned its rights under the agreement to specified finance companies.

Plaintiff moved for class certification according to MCR 3.501(B) with himself as class representative. The motion argued against enforcing the arbitration provision because plaintiff was basing his claims not on the lease agreement, but rather on the price sheet, and also because defendant did not retain any rights under the lease agreement for having assigned its rights to a holder, Cab West LLC.

At the hearing on the motion, the trial court stated that the lease agreement was "the underlying contract that governs this transaction," and that the pricing sheet would not exist without the lease agreement. The trial court continued that the language of the lease agreement included defendant in the arbitration provision, and covered every "resulting transactional relationship," such as the price sheet. The trial court found that defendant, as lessor, was a party to the lease contract, which afforded it the right to arbitrate a claim. The trial court also found that the language of the arbitration clause indicated the intent that claims against defendant be subject to arbitration even though the contract was assigned concurrent with its execution. The trial court granted defendant's motion for dismissal under MCR 2.116(C)(7), and plaintiff now appeals.

## II. STANDARD OF REVIEW

Summary disposition is granted under MCR 2.116(C)(7) when dismissal of the action is appropriate because of "an agreement to arbitrate or to litigate in a different forum." This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7). *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022) In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true, and construes in plaintiff's favor, well-pleaded allegations in the pleadings, affidavits, depositions, admissions, and documentary evidence submitted by the parties to determine whether a genuine issue of material fact exists. *Childers v Progressive Marathon Ins Co*, 343 Mich App 257, 266; 997 NW2d 273 (2022). This Court reviews the interpretation of a contract de novo, including whether a claim is within the scope of an arbitration provision. See *Lichon v Morse*, 507 Mich 424, 436; 968 NW2d 461 (2021).

## III. SCOPE OF THE ARBITRATION AGREEMENT

The trial court did not err by granting summary disposition to defendant because the parties agreed to have the option to arbitrate claims such as plaintiff's.

"An arbitration agreement is a contract by which the parties forgo their rights to proceed in civil court in lieu of submitting their dispute to a panel of arbitrators." *Galea v FCA US LLC*, 323 Mich App 360, 369; 917 NW2d 694 (2018) (quotation marks and citation omitted). An agreement to arbitrate is a matter of contract. *Ferndale v Florence Cement Co*, 269 Mich App 452, 458; 712 NW2d 522 (2006). The primary task in the interpretation of a contract is to "ascertain the intention of the parties," and, if the court determines that an arbitration agreement exists, whether its terms are enforceable. *Id*.

Summary disposition under MCR 2.116(C)(7) is appropriate when the parties have "entered a valid and enforceable arbitration agreement." *Registered Nurses, Registered*

*Pharmacists Union v Hurley Med Ctr*, 328 Mich App 528, 535; 938 NW2d 800 (2019) (quotation marks and citation omitted). To determine whether a dispute is exclusively subject to arbitration, "courts must first determine whether an arbitration agreement has been reached by the parties." *Galea*, 323 Mich App at 369 (quotation marks and citation omitted). An arbitration agreement does not exist "unless it was formed by the mutual assent of the parties." *Id.* "A party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration." *Lichon*, 507 Mich at 437 (quotation marks, citation, and brackets omitted). A court determines whether an arbitration agreement exists by applying general contract principles. *Madison Dist Pub Schs v Myers*, 247 Mich App 583, 591; 637 NW2d 526 (2001). In this case, the parties do not dispute that there is an arbitration provision in plaintiff's lease agreement for his vehicle, but do dispute whether his claim of fraudulent business practices is subject to the arbitration agreement.

Plaintiff's claim, which the trial court determined was subject to an arbitration provision in a lease agreement, was that defendant used highly inflated prices on "price sheets," which were not included when the customer signed the lease agreement or which defendant otherwise obscured, resulting in unsuspecting customers overpaying for accessories defendant installed on purchased or leased vehicles. Plaintiff alleged that he was charged $359 for $170 floor mats, and "hundreds of dollars" (the price sheet actually reflects a $149.90 charge) for $50 wheel locks, and that he did not discover the prices until he demanded a copy of the price sheet that he had signed. Plaintiff insists that his claim is based on the price sheet, and not on the lease agreement.

The price sheet was titled AXZD-Plans Pricing Agreement, with a subtitle stating that it was a "plan price calculation." The document lists the invoice price of the vehicle ($45,113.54), and, in a separate section, lists "extra charge items" and "dealer added equipment," in this case, fees, floor mats, and wheel locks (all together an additional $1,407.90). The price sheet then adds the sections to arrive at a "total selling price" ($46,521.44), and states that the "customer" agrees to the invoice price to which "additional costs" of $1,407.90 have been added.

The arbitration provision in the lease agreement states as follows:

Arbitration is a method of resolving any claim, dispute, or controversy (collectively, a "Claim") without filing a lawsuit in court. Either you or Lessor/Finance Company/Holder ("us" or "we") (each, a "Party") may choose at any time, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration. Neither party waives the right to arbitrate by first filing suit in a court of law. Claims include but are not limited to the following: 1) Claims in contract, tort, regulatory or otherwise; 2) Claims regarding the interpretation, scope, or validity of this provision, or arbitrability of any issue except for class certification; 3) Claims between you and us, our employees, agents, successors, assigns, subsidiaries, or affiliates; 4) Claims arising out of or relating to your application for credit, this contract, or any resulting transaction or relationship, including that with the dealer, or any such relationship with third parties who do not sign this contract.

The provision continues with a section titled, "RIGHTS YOU AND WE AGREE TO GIVE UP":

If either you or we choose to arbitrate a Claim, then you and we agree to waive the following rights:

• RIGHT TO A TRIAL; WHETHER BY A JUDGE OR JURY

• RIGHT TO PARTICIPATE AS CLASS REPRESENTATIVE OR A CLASS MEMBER IN ANY CLASS CLAIM YOU MAY HAVE AGAINST US WHETHER IN COURT OR IN ARBITRATION

• BROAD RIGHTS TO DISCOVERY AS ARE AVAILABLE IN A LAWSUIT

• RIGHT TO APPEAL THE DECISION OF AN ARBITRATOR

• OTHER RIGHTS THAT ARE AVAILABLE IN A LAWSUIT.

The provision goes on to list the rights that the parties do not give up by agreeing to arbitrate, and addresses arbitration procedures and costs. The provision ends with the following:

If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration provision shall be unenforceable. The validity and scope of the waiver of class action rights shall be decided by the court and not the arbitrator.

Plaintiff argues that his claim does not even reference the lease agreement, but the trial court found that the lease agreement was not merely the financing contract for a vehicle, but "the underlying contract that governs this transaction," and that the pricing sheet would not exist without the lease agreement. The trial court noted that the language of the arbitration provision included the defendant, as the subject dealer, and held that it subjected to arbitration any claims from a "resulting transactional relationship," such as the price sheet.

At issue is whether plaintiff's claim for fraudulent business practices regarding the prices displayed in the price sheets was a "claim related to this contract." The goal of contract interpretation "is to determine and enforce the parties' intent on the basis of the plain language of the contract." *AFSCME v Detroit*, 267 Mich App 255, 262; 704 NW2d 712 (2005). This Court enforces "clear and unambiguous language as written." *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015). Any conflict should be resolved in favor of arbitration. *Fromm v Meemic Ins Co*, 264 Mich App 302, 306; 690 NW2d 528 (2004).

In this case, the plain language of the arbitration provision suggests that plaintiff's claims fell within the agreement. The arbitration provision was included in the lease agreement between plaintiff, the lessee, and defendant, the lessor, and stated that, by signing, plaintiff would "agree to lease the vehicle according to the terms" in "the lease." The terms included the amount due at signing, and the amount of the 24 monthly payments, as calculated from "the agreed upon value of the vehicle" of $46,267. Plaintiff's claims emanated from the amount that he was charged to lease the vehicle, mainly the allegedly inflated costs on the price sheet. Plaintiff did not agree to pay any amount, including the costs listed on the price sheet, until he signed the lease agreement.

Thus, the claim regarding the price sheet is "related to this contract," insofar as the lease agreement includes plaintiff's promise to pay an amount that was, at least in part, delineated on the price sheet.

In *Lichon*, 507 Mich at 428-435, our Supreme Court considered whether two separate claims made by two plaintiffs involving sexual misconduct at their workplace were precluded by an agreement to arbitrate in their employment contracts. The Court examined whether the claims were relative to employment as to fall within the bounds of the arbitration agreement, *id*. at 436-437, and held that to determine this question, a court must "consider[] whether the claims could be maintained without reference to the contract or relationship at issue," *id*. at 444. The Court remarked that employing this test would keep an arbitration clause from barring some litigation, particularly those claims that have little relationship to the employment relationship. *Id*. at 440. Even though the Court was considering whether a claim was "relative to" an employment relationship, it stated that by implementing this test, the Court would "require more than the barest factual connection for a claim to be relative to employment or another pertinent contractual relationship." *Id*. Thus, it appears that the Court approved the use of this independent standing test to determine the arbitrability of a claim in contexts other than an employment relationship.

In this case, it is likely that plaintiff's claims could not "be maintained without reference to the contract or relationship at issue," and thus were subject to the arbitration clause as claims "related to" the lease agreement. Plaintiff argues that the price sheet claims were obviously not related to, and could be maintained without reference to, the lease agreement, because neither the complaint nor the price sheet mentioned the lease agreement. Plaintiff notes that the price sheet specifically states: "This form does not impact the completion of the financing documents that may be used in the course of the sale transaction. Specifically, the form does not determine the cash price in a retail installation sale contract or the agreed upon value of a vehicle in a lease." Thus, there is some indication that the price sheet is separate from the lease agreement.

However, the document described itself as a "plan price calculated" form, thus merely a list of the costs of items relative to the specific vehicle that a customer was leasing. In plaintiff's case, this included the invoice amount of the vehicle he wanted to lease, some fees, and the costs of wheel locks and floor mats that apparently did not come as part of the base model of the vehicle. This form provided a "total selling price," and, notably, signing the document did not obligate either party actually to engage in the selling or leasing the vehicle referenced, or even state that the vehicle leased or sold would include the added items specified on the form. The signatures on the form indicated confirmation of only the invoice price of the vehicle, and the amount that would be added to the invoice cost. The form says, "I, the customer, have read and agree to the AXZD Plan Price on the invoice. I understand that any additional costs/added items . . . totaling $1,407.90 have been added to the plan price." The form, on its own, would not have resulted in any harm or loss to plaintiff because it set forth no obligation to act. Therefore, plaintiff's claim could not be maintained without reference to the lease agreement.

Plaintiff states that the lease agreement and the price sheet are two different contracts with two different purposes. However, the price sheet does not seem to be a contract, but more of a breakdown of the price of the leased vehicle with added costs such as the floor mats and wheel locks. There was no provision for acceptance of what was offered, and plaintiff promised no consideration on this form. The form merely indicated recognition of the invoice price of the

vehicle and the price of fees and add-on accessories.  The requirements for a valid contract are "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citation omitted).  In this case, the price sheet established no obligation, including consideration.

Further, plaintiff's claim seemingly could not be maintained without reference to the relationship at issue.  Plaintiff would not have leased a vehicle which included allegedly inflated prices for accessories without the relationship between defendant as the lessor and dealer, and plaintiff as the lessee.  Plaintiff's claims rely on defendant, as a business, deceiving its customers to produce greater profit.

Accordingly, plaintiff's claims that defendant used its price sheet to defraud customers was a "claim related to this [lease agreement]" subject to the arbitration clause.  Even though the lease agreement did not state that the price sheet provided the amount that plaintiff was responsible for paying, the "agreed upon value of the vehicle ($45,622.44) and any items You pay over the lease term" was equal to the invoice price on the price sheet ($45,113.54) plus the total cost of the wheel locks and floor mats ($508.90) from the price sheet.  The two documents thus agree on the total price of the transaction, and bore the same date.  Therefore, the price sheet "plan price calculated" was demonstrably related to the lease agreement—the document obligating plaintiff to pay the calculated price.

Further, there was additional evidence from the language of the lease agreement that the parties intended to have the option to arbitrate claims such as plaintiff's.  The lease agreement provided nonexclusive examples of claims related to it, including claims from "any resulting transaction or relationship, including that with the dealer."  Plaintiff's claims involved his leasing transaction with the dealer, which allegedly included inflated costs.  Plaintiff's complaint alleged fraud in the inducement, fraudulent misrepresentation, breach of contract, unjust enrichment, and violation of consumer-protection laws.  The lease agreement listed such claims subject to arbitration as "[c]laims in contract, tort, regulatory or otherwise."  Thus, the arbitration agreement specified that claims such as those plaintiff alleged were related to the lease agreement.

For these reasons, the language of the arbitration provision in the parties' lease agreement indicated the parties' agreement to permissive arbitration of the claims plaintiff brought.  Accordingly, the trial court did not err by granting defendant's motion to dismiss plaintiff's complaint under MCR 2.116(C)(7) in favor of arbitration.

IV. ASSIGNMENT OF THE LEASE

The trial court did not err by finding that defendant retained the right to invoke the arbitration provision in the lease agreement.

Contractual rights may be assigned unless an assignment is expressly restricted.  *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 197; 920 NW2d 148 (2018).  In an assignment, the assignor transfers the rights and interests of a contract to the assignee.  *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 284; 983 NW2d 401 (2022).  The assignee succeeds to the rights of the assignor.  *Id*.  The assignee of a contract assumes the same

rights and is subject to the same defenses because it stands in the position of the assignor. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 247; 733 NW2d 102 (2006).

In this case, plaintiff argues that, because defendant assigned its rights in the lease agreement, including the arbitration provision, to a third-party, defendant could no longer rely on the arbitration provision in response to plaintiff's claim.

The lease agreement properly identifies defendant as the lessor, plaintiff as the lessee, Cab West LLC as the "Holder," and Ford Motor Credit Company as the "finance company." The lease agreement contains the following assignment provision:

> ASSIGNMENT AND ADMINISTRATION When You and Lessor sign this Lease, Lessor will assign it to Holder, Finance Company, or a substitute will administer this lease. You must then pay, in U.S. funds, all amounts due under this lease to Finance Company. If Finance Company is not the Holder of this lease, Holder has appointed Finance Company as its agent. As agent for Holder, Finance Company has the power to act on Holder's behalf to administer, enforce, and defend this lease. If Lessor has agreed to repair or maintain the Vehicle, obtain any insurance or perform any other services, You will look only to the Lessor for those services.

Above defendant's signature line, the lease provides that "[l]essor accepts this lease and assigns it to Holder under the terms of the lease plan agreement between Lessor and Holder." Above plaintiff's signature, the lease agreement states, "You signed it and notice of an assignment of this lease by the Lessor to Holder." Thus, defendant assigned its rights and interests in the lease agreement to Cab West LLC, who assumed defendant's rights and interests because it stood in defendant's place as the assignee.

Regarding plaintiff's argument that defendant could not properly exercise the arbitration option because that option was a part of the contract that defendant had assigned, the trial court reasoned as follows:

> In this particular case all the parties know at the outset that this lease is going to be assigned, it's not similar to other situations, mortgages, et cetera, that are signed [sic] down the road. Everybody knows, all the parties up front know the contract's gonna be assigned, because all of the relevant parties are listed on the lease contract, including the ultimate holder who's Cab West, they're on the lease contract.

> So if the parties know that at the get-go, why would there be language in the arbitration clause that, as the Court noticed, that the resulting transactions or relationships including that with the dealer are covered by the arbitration clause when all of these parties know at the time that they signed this lease.

The trial court concluded that, because the contract was assigned concurrently with its signing, treating the assignment as nullifying defendant's arbitration option would "render a big portion of the arbitration clause meaningless." The trial court concluded that it "can't find that the intent of the parties to this contract is that those [arbitration] rights are assigned away immediately. Like that there'd be no reason for that language in the arbitration agreement, which specifically references the dealer, the claims relating to the dealer as part of those claims that are covered by the arbitration contract, that that would just be meaningless." The trial court elaborated:

> And so the Court finds that that right was not assigned away by nature of the fact that Cab West and/or Ford Motor Credit Company became on a practical level the servicer and the owners of the finance contract.

> So for that reason the Court does find that the matter is subject to arbitration, it was clearly specified in the contract, all parties were there, so the Court does find that Defendant's motion to have arbitration is well founded.

There is merit in defendant's and the trial court's reasoning. "Assignment agreements are considered contracts, and must be interpreted as such." *Centria Home Rehabilitation, LLC v Allstate Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363699); slip op at 2. The language of the lease agreement expressly informed the parties that defendant assigned the lease immediately, but also, as discussed, that claims "related to this contract," including those against defendant, were subject to permissive arbitration. The language of the arbitration clause— "Either you or *Lessor*/Finance Company/Holder ("us" or "we") (each, a "Party") may choose *at any time*, including after a lawsuit is filed, to have any Claim related to this contract decided by arbitration" (emphasis added)—explicitly indicated that defendant may choose arbitration, even in light of defendant's assignment of its financial interest in the contract. This language signaled the parties' agreement that defendant retained the option of arbitration of claims against it that were related to the lease agreement even after assigning the lease.

At issue is whether defendant's retention of that right is contrary to the legal principle that the assignee stands in the place of the assignor. An assignor may not assert control over, and thus bind the assignee to, a defense to a contract that it has assigned. *Aultman, Miller & Co v Sloan*, 115 Mich 151, 154; 73 NW 123 (1897). However, in this case, plaintiff made a claim against defendant, and not the assignee. Even though plaintiff argues that its claims were related to the price sheets, plaintiff's claims had to be based on the lease agreement because, as discussed, a claim on the price sheets was "related to" the lease agreement and subject to the arbitration clause. Plaintiff's claim for damages against defendant, and even his standing to bring a claim against defendant,[1] stemmed from his having to pay for the lease of the vehicle with allegedly inflated

---

[1] "A real party in interest is the one who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (quotation marks and citation omitted). The real-party-in-interest doctrine "recognizes that litigation should be begun only by a party having an interest that will assure sincere and

added costs, which was the function of the lease agreement. By pursuing a claim against defendant, which had to be based on the lease agreement, plaintiff implicitly recognized that defendant retained some postassignment relationship to the lease agreement.

Plaintiff argues that the assignment extinguished defendant's rights and obligations under the lease agreement, citing *C C James Roofing Co v Regent Theater Co of Grand Rapids*, 236 Mich 536, 539-540; 211 NW 85 (1926). However, it would be inconsistent to hold that plaintiff could maintain a claim against defendant under his lease for use of defendant's vehicle, but that defendant could not invoke any of the rights the parties agreed to in the lease agreement in its defense. There is no authority presented or located for the proposition that an assignment would allow a claim against the assignor, but would prevent the assignor's recourse to any defenses, under the assigned agreement.

In this case, the parties agreed that plaintiff would lease a vehicle, that claims against defendant related to the lease would be subject to arbitration, and that the lease agreement was assigned. Because plaintiff's claims against defendant were related to his lease of the vehicle under the agreement, the entire agreement between the parties should be considered, and defendant should be able to enforce the terms, even though all financial rights under the lease had been assigned.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Allie Greenleaf Maldonado

---

vigorous advocacy" and "protects a defendant from multiple lawsuits for the same cause of action." *Id*. (quotation marks and citation omitted).